**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Aquana McAlister,<br><br>                Plaintiff,<br><br>vs.<br><br>Lexington Medical Center,<br><br>                          Defendant. | Civil Action No.: 3:24-cv-04686-CMC-TER<br><br>**DEFENDANT LEXINGTON COUNTY HEALTH SERVICES DISTRICT, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS WITH PREJUDICE, IN PART** |

Defendant Lexington County Health Services District, Inc., incorrectly identified as Lexington Medical Center ("LMC" or the "Company') by and through its undersigned counsel, respectfully submits this memorandum in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss this action with prejudice, in part. Plaintiff Aquana McAlister ("Plaintiff") has filed a three-count complaint alleging causes of action for (1) race discrimination in violation of 42 U.S.C. § 1981 ("§ 1981") premised on (a) acceleration of her resignation notice period and (b) failure to promote; (2) breach of contract; and (3) breach of contract accompanied by a fraudulent act. (ECF No. 1).  Plaintiff has failed to state claims upon which relief can be granted with respect to her first cause of action under § 1981 premised on her "termination" via an accelerated resignation notice period, as well as her second and third causes of action for breach of contract and breach of contract accompanied by a fraudulent act.[1]

---

[1] Plaintiff has also advanced a race discrimination claim under § 1981 based on alleged failure to promote. By way of this Motion, LMC is not seeking dismissal of that portion of the claim, and only requests dismissal of Plaintiff's race discrimination claim related to her accelerated resignation notice period.

# I.    <u>INTRODUCTION</u>

As set out more fully below, Plaintiff's § 1981 claim based on her accelerated resignation notice period cannot survive Rule 12(b)(6) scrutiny because LMC's decision to expedite Plaintiff's separation does not constitute an adverse employment action as a matter of law, and she was not constructively discharged from employment. Plaintiff's Complaint also attempts to hold LMC liable in contract based on an untenable construction of its Policies and Procedures, which specifically disclaim any contractual relationship and contain none of the hallmark characteristics of an enforceable contract under South Carolina law. This same deficiency—lack of an enforceable contract—also plagues Plaintiff's breach of contract accompanied by a fraudulent act cause of action, and Plaintiff has failed to plead the existence of a fraudulent act by LMC. Accordingly, these two claims should also be dismissed with prejudice. [2]    For the reasons discussed below,

---

[2] LMC reserves all rights and defenses related to each of the claims asserted by Plaintiff. Further, LMC denies the grossly inaccurate allegations of the Complaint, but accepts them for purposes of this Motion only. LMC has not filed an Answer to the Complaint concurrently with the filing of its Partial Motion to Dismiss, as the filing of this Motion suspends its deadline to submit a responsive pleading on any remaining claims. *Norton v. Gen. Motors, LLC*, No. CV 4:19-329-DCC-KDW, 2019 WL 3308393, at *5 (D.S.C. Apr. 10, 2019), *report and recommendation adopted*, No. 4:19-CV-00329-DCC, 2019 WL 2511241 (D.S.C. June 18, 2019) (finding the defendant's time to file an answer to causes of action not addressed in its partial motion to dismiss should be delayed pending the court's order on the motion) (citing WRIGHT AND MILLER, Service of Responsive Pleadings—Time for Serving and Filing, 5B Fed. Prac. & Proc. Civ. § 1346 (3d ed.) ("the weight of the limited authority on this point is to the effect that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion.")); *see also, See Godlewski v. Affiliated Computer Servs., Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002) (adopting the majority view that filing a partial motion to dismiss suspends the time to respond to the entire complaint, noting "if the courts require a defendant to answer in 'piecemeal fashion,' a 'procedural thicket' would emerge," and "[t]horny questions would arise as to how the case should proceed pending resolution of the motion"); *Justice v. Dimon*, No. 3:10CV413, 2011 WL 2183146, at *2 (W.D.N.C. June 6, 2011) ("[T]his court will also find that the filing of a motion to dismiss on less than all of the claims in a complaint suspends the time to respond to the entire complaint as contemplated in Rule 12(a)."); *Jacobson v. Allstate Ins. Co.*, No. CV WDQ-06-1629, 2006 WL 8456604, at *2 (D. Md. Oct. 17, 2006) ("This Court adopts the majority view, and construes Rule 12(a)(4) to provide that service

Plaintiff's First Cause of Action should be dismissed, in part, with prejudice, as well as her Second and Third Causes of Action, *in toto*.

## II.    PLAINTIFF'S FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff's is an African American female and former employee of LMC. (Compl., ECF No. 1 ¶ 4, 6). During her employment, which began in 2021, Plaintiff worked as a Credentialed Trainer. (*Id*. ¶ 6). In her Complaint, Plaintiff contends she applied for several promotional positions, including an Application Analyst position in 2021, an Information System Specialist role in early 2022, an Information System Specialist (Principle Trainer) in mid-2022, and two additional Information System Specialist positions in September 2023 and March 2024. (*Id*., ¶¶ 12-15). Plaintiff asserts all of these positons were awarded to Caucasian applicants. (*Id*.) According to Plaintiff, she was the most qualified applicant for all of these jobs and was allegedly denied advancement by her Caucasian manager due to her race, African American. (*Id*., ¶¶ 4, 8, 16).

On April 29, 2024, Plaintiff notified LMC she was resigning her position, effective May 10, 2024. (*Id*., ¶ 18). Plaintiff avers her resignation was the result of LMC's alleged "continual failure to promote [her]" and the purported race discrimination she had experienced. (*Id*., ¶ 18). After discussion with LMC, Plaintiff agreed to extend her notice period through May 24, 2024. (*Id*., ¶ 19). However, on May 17, 2024, prior to the expiration of Plaintiff's notice period, LMC elected to separate her employment early. (*Id*., ¶ 20).

---

of a 12(b) motion that addresses only part of a complaint suspends the time to respond to the entire complaint.").

### III.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id*.

Although well-pleaded factual allegations must be accepted as true, the Court need not accept as true legal conclusions, unwarranted inferences, or arguments cast as factual allegations. *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a 12(b)(6) motion to dismiss, because "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 678, 686. "A plaintiff 'must allege sufficient facts to establish th[e] elements' of his claim and 'advance [that] claim across the line from conceivable to plausible.'" *Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 658 (4th Cir. 2016) (quoting *Walters v. McMahen*, 684 F. 3d 435, 439 (4th Cir. 2012)). If a complaint fails to state a claim upon which relief can be granted, it must be dismissed. *Francis v. Giacomelli*, 588 F.3d 186, 192-93 (4th Cir. 2009).

## IV.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Plaintiff Has Failed to State a Claim Under § 1981 Because An Accelerated Notice Period Is Not an Adverse Employment Action.

Plaintiff's first cause of action asserts violations of § 1981 for alleged discrimination based on race. Plaintiff's claim is premised, in part, on the contention that LMC's decision to shorten her notice period after she submitted her resignation was tantamount to unlawful termination. (Compl., ECF No. 1, ¶¶ 20, 25, 27). However, this theory of recovery is not viable because LMC's decision to expedite Plaintiff's voluntary separation does not constitute an adverse employment action as a matter of law, and she was not constructively discharged, necessitating dismissal.

To sufficiently state a claim for race discrimination under § 1981, Plaintiff must allege that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she was subjected to an adverse employment action; and (4) other employees who were not members of her protected class were treated more favorably or there is some other evidence giving rise to an inference of unlawful discrimination. *Ferguson v. Waffle House, Inc.*, 18 F. Supp. 3d 705, 719–20 (D.S.C. 2014); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) ("[T]he *McDonnell Douglas* framework, developed for Title VII, has been used to evaluate race discrimination claims under [§ 1981 as well]."). Under § 1981, Plaintiff is also required to "allege facts making it plausible that, but for race, she would not have suffered the loss of a legally protected right under the statute." *Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (holding under § 1981, the "but-for" standard applies in the pleadings stage).

Here, Plaintiff's claim fails on its face for want of an adverse employment action. Although Plaintiff avers her notice period was cut short by LMC, these allegations fail to demonstrate adverse action as a matter of law, particularly because at the time LMC elected to accelerate

Plaintiff's employment separation, she had already *voluntarily resigned* her position with the Company. In such circumstances, courts in this Circuit and others have held unanimously that an employer's decision to end the employment relationship early and forgo an employee working her entire notice period, does not transform an otherwise voluntary resignation into an involuntary termination. *See Vasquez v. Potomac Hosp., Inc.*, No. 1:10-CV-216, 2010 WL 3984685, at *5–6 (E.D. Va. Oct. 8, 2010) (finding unpersuasive plaintiff's argument that he was subjected to "retaliatory termination" when his employer chose to accept his resignation as effective one week early because plaintiff "resigned of his own accord" and "an acceptance of an employee's resignation prior to the employee's intended last day does not convert a resignation into a termination") (citing *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 64 n. 4 (5th Cir.1980) (finding that the company's acceptance of an employee's resignation effective immediately upon receipt of her two weeks' notice did not constitute a discharge)); *Curby v. Solutia, Inc.,* 351 F.3d 868, 872 (8th Cir. 2003) ("An employee cannot submit a resignation and then claim the employer's acceptance of the resignation is an adverse employment action.")); *Phifer v. City of Rocky Mount*, No. 5:08-CV-00292-FL, 2010 WL 3834565, at *15 (E.D.N.C. Aug. 12, 2010), *report and recommendation adopted*, No. 5:08-CV-292-FL, 2010 WL 3860411 (E.D.N.C. Sept. 28, 2010) (explaining accepting an employee's resignation and then deciding to "waive a notice period that would have required an employee to work for an additional, limited period of time, does not constitute an adverse employment action.") (citing *Wynn v. Paragon Sys., Inc.,* 301 F.Supp.2d 1343, 1354 (S.D.Ga. 2004) (noting an employer's decision not to accept an employee's request that his resignation be effective at a later date does not constitute an adverse employment action)).

Additionally, Plaintiff cannot save her claim with allegations of constructive discharge because, even construing the facts in the light most favorable to Plaintiff, she has failed to plausibly

plead intolerable working conditions. In order to effectively state a constructive discharge claim, Plaintiff must allege her "working conditions [became] so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016). However, intolerability is a high bar, and as a result, "constructive discharge requires a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment," *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019), under which "the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146–47 (2004). "Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Id.* at 147.

In her pleading, Plaintiff avers she resigned due to the alleged "continual failure to promote" her and the purported "racial discrimination she had been receiving." (Compl., ¶ 18). However, Plaintiff has not alleged any racially discriminatory treatment other than the failure to promote her to another job. *See* Compl., ¶¶ 12, 13, 14, 15, 16, 17, 24, 26. As such, the only alleged "intolerable" treatment Plaintiff received was not being promoted to another position—conduct insufficient as to state a claim for constructive discharge. *Salley v. Sch. Bd. of Amelia Cnty., Virginia*, No. 3:20CV939, 2021 WL 5760893, at *13 (E.D. Va. Dec. 3, 2021) (finding no constructive discharge where the plaintiff alleged she had a "superior resume" and was "one of the top two applicants" because "being denied a promotion would not compel a reasonable person to resign"); *Davis v. Kendall*, No. CV TJS-21-2593, 2022 WL 17668747, at *4 (D. Md. Dec. 14, 2022), *aff'd*, No. 23-6149, 2024 WL 1230146 (4th Cir. Mar. 22, 2024) (holding plaintiff failed to plead a plausible constructive discharge claim because "[a] reasonable person in his position would not have found his non-promotion [made] his working conditions so intolerable as to compel him

to resign"); *see also*, *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) ("[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" do not constitute objectively intolerable conditions."); *Perkins*, 936 F.3d at 212 ("denial of management positions, without more, are not so intolerable as to compel a reasonable person to resign").

Because Plaintiff voluntarily resigned her position under circumstances that do not give rise to constructive discharge, and her expedited resignation was not adverse, her § 1981 claim for alleged unlawful termination should be dismissed with prejudice.

**B.    Plaintiff Has Failed to State a Claim for Breach of Contract Because LMC's Policies and Procedures, Including its EEO Policy, Are Not an Enforceable Contract.**

In her second cause of action, Plaintiff alleges LMC breached its Policies and Procedures which purportedly constitutes a binding contract because it "assures employees they will be treated in a nondiscriminatory and fair manner." (Compl., ¶ 33).[3]  Specifically, Plaintiff asserts LMC breached its contract with her because it failed to provide the alleged "promises of protection" set forth in the Company's Equal Employment Opportunity ("EEO") Policy. (*Id.*, ¶ 35).  However, LMC's polices contain statutorily-compliant conspicuous disclaimers that unequivocally preclude contract formation under South Carolina law. Additionally, neither the Policies and Procedures, nor the EEO Policy, contain any mandatory language or otherwise limit LMC's ability to terminate Plaintiff's employment, negating any claim that LMC entered into a contract with Plaintiff.

To maintain a claim for breach of contract, Plaintiff must allege facts sufficient to establish: (1) the existence of a contract, (2) LMC's breach of the alleged contract, and (3) damages caused

---

[3] Plaintiff's Complaint makes reference to LMC's "Employee Handbook;" however, the Company does not have an Employee Handbook, but rather, maintains a set of Policies and Procedures that govern the workplace.

by such breach. *Hotel & Motel Holdings, LLC v. BJC Enterprises, LLC*, 414 S.C. 635, 654, 780 S.E.2d 263, 274 (S.C. Ct. App. 2015) (citing *Floyd v. Country Squire Mobile Homes, Inc*., 287 S.C. 51, 53–54, 336 S.E.2d 502, 503–04 (S.C. Ct. App. 1985)). South Carolina has long-recognized the doctrine of employment at-will, such that the law presumes individuals maintain an at-will relationship with their employers. In order to survive a Rule 12(b)(6) motion seeking dismissal of a breach of contract claim premised on an "employment contract," a plaintiff must plead sufficient factual allegations establishing the existence of an employment contract beyond the at-will relationship. *Prescott v. Farmer's Tel. Co–Op., Inc*., 335 S.C. 330, 516 S.E.2d 923, 927, n.8 (S.C. 1999) (stating South Carolina's presumption of at-will employment); *Cook v. Dolgencorp, LLC*, 2013 WL 5408670, at *8 (D.S.C. Sept. 25, 2013) (citing the rule that Plaintiff must plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship).

Thus, to survive dismissal, the complaint must "set forth sufficient factual allegations . . . to state a facially plausible claim that the [p]arties entered into a contract with terms of employment that limited the duration of the relationship or the right of termination or both." *Weaver v. John Lucas Tree Expert Co.*, No. 2:13-CV-01698-PMD, 2013 WL 5587854, at *6 (D.S.C. Oct. 10, 2013); *Ensley v. Goodwill Indus. of Lower SC*, No. CV 9:17-3113-BHH-KFM, 2018 WL 5115569, at *6 (D.S.C. Sept. 17, 2018), *report and recommendation adopted*, No. CV 9:17-3113-BHH, 2018 WL 5112456 (D.S.C. Oct. 19, 2018) (dismissing breach of contract claim on 12(b)(6) motion where the language of the employer's policies and procedures did "not guarantee the plaintiff employment for a specific duration," did not "promise [plaintiff] that a particular process would be followed before he [could] be fired," and did not "promise specific treatment in specific situations such that the plaintiff's at-will employment status was altered").

For an employment policy to be an enforceable contract, it must be definitive in nature, promising specific treatment in specific situations." *Hessenthaler v. Tri–County Sister Help, Inc.,* 365 S.C. 101, 616 S.E.2d 694, 698 (S.C.2005); *see also, Nelson v. Charleston Cnty. Parks & Recreation Comm'n*, 362 S.C. 1, 605 S.E.2d 744, 747 (S.C. Ct. App. 2004) (finding employer policies, written reprimands, counseling, and warnings issued to employee were not a contract because "[i]n order for a[n] [employer policy] to alter an employee's at-will status and create an employment contract, the employer must phrase the document's language in mandatory terms giving rise to a promise, an expectation and a benefit to an employee."). Here, the Policies and Procedures, including the EEO policy, lack these essential elements and are not an employment contract.

### 1.  LMC has conspicuously disclaimed any contractual relationship.

At the outset, Plaintiff's assertion that the Policies and Procedures constitute a binding contract is directly belied by the conspicuous disclaimers LMC has included in its Policies and Procedures Acknowledgment Form, Employment Policies Acknowledgment Form, and the EEO policy, which specifically repudiate the existence of a contractual relationship. Under South Carolina law, an employee handbook *only* forms an employment contract when: "(1) the handbook provision(s) and procedure(s) in question apply to the employee, (2) the handbook sets out procedures binding on the employer, and (3) the handbook *does not* contain a conspicuous and appropriate disclaimer." *Frasier v. Verizon Wireless*, No. 8:08-356-HMH, 2008 WL 724037, at *1 (D.S.C. March 17, 2008) (quoting *Grant v. Mount Vernon Mills, Inc.*, 370 S.C. 138, 634 S.E.2d 15, 20 (Ct. App. 2006) (emphasis added)).  To avert contract formation, an employer must comply with the strictures of South Carolina's statute governing conspicuous disclaimers in employment handbooks and policies, which provides:

It is the public policy of this State that **a handbook, personnel manual, policy, procedure**, or other document issued by an employer or its agent . . . **shall not create an express or implied contract of employment if it is conspicuously disclaimed**. For purposes of this section, a disclaimer in a handbook or personnel manual must be in **underlined capital letters on the first page of the document and signed by the employee. For all other documents** referenced in this section, **the disclaimer must be in underlined capital letters on the first page of the document**."

S.C. Code Ann. § 41-1-110 (emphasis added).

Through its Policies and Procedures Acknowledgment Form, LMC informed Plaintiff and she agreed:

**ALL EMPLOYEES OF THE LEXINGTON HEALTH, INC. (LHI) D/B/A LEXINGTON MEDICAL CENTER (LMC) ARE EMPLOYED AT-WILL AND MAY QUIT OR BE TERMINATED WITHOUT NOTICE AND/OR WITHOUT REASON AT ANY TIME AND FOR ANY REASON. NOTHING IN ANY OF LMC'S RULES, POLICIES, HANDBOOKS, PROCEDURES OR OTHER MEDIA AND/OR MEDIUM CREATES ANY EXPRESS OR IMPLIED CONTRACT OF ANY TYPE, INCLUDING, BUT NOT LIMITED TO, EMPLOYMENT . . . NO PROMISES OR ASSURANCES, WHETHER WRITTEN OR ORAL, CREATE ANY CONTRACT OF ANY TYPE, INCLUDING BUT NOT LIMITED TO, EMPLOYMENT UNLESS: 1) THE TERMS ARE PUT IN WRITING, 2) THE DOCUMENT IS LABELED A CONTRACT OR AGREEMENT, 3) THE DOCUMENT STATES THE TERM OF EMPLOYMENT, AND 4) THE DOCUMENT IS SIGNED BY LMC'S PRESIDENT & CHIEF EXECUTIVE OFFICER AND HIS/HER DESIGNEE. I ACKNOWLEDGE THAT LMC'S POLICIES AND PROCEDURES, INCLUDING THOSE ON THE INTRANET, ARE NOT A CONTRACT OF EMPLOYMENT.**

(**Exhibit 1 –Policies and Procedures Acknowledgement Form Signed by Plaintiff**) (emphasis in original).  Similarly, Plaintiff acknowledged LMC's Employment Policies and she agreed:

**I, THE UNDERSIGNED, HEREBY: ACKNOWLEDGE THAT I HAVE READ, AND HAVE HAD EXPLAINED THE ABOVE STATEMENTS, POLICIES, PRACTICES, AND CONDITIONS OF EMPLOYMENT AND UNDERSTAND THAT NOTHING IN THIS ACKNOWLEDGMENT OR IN ANY POLICY ISSUED BY THE ORGANIZATION CREATES A**

<u>CONTRACT OF EMPLOYMENT, NOR DOES IT CONSTITUTE A
CONTRACT OF EMPLOYMENT FOR ANY TERM.</u>

(**Exhibit 2 –Employment Policies Acknowledgment**) (emphasis in original). Likewise LMC's

EEO policy also contains a conspicuous disclaimer on the first page, in underlined capital letters,

that reads, in part: "<u>**THIS POLICY DOES NOT CREATE AN EMPLOYMENT CONTRACT**</u>

<u>**BETWEEN THE EMPLOYEE AND LEXINGTON MEDICAL CENTER**</u>." (**Exhibit 3 –**

**EEO Policy**) (emphasis in original).[4]

These disclaimers, taken in conjunction with the other non-mandatory language throughout

the EEO policy, evince an intent by LMC to deliberately avoid contract formation and eliminate

any contractual rights for its employees. Significantly, under South Carolina law, this conspicuous

---

[4] In addition to the factual allegations asserted in the Complaint, as part of its 12(b)(6) review, the Court may also consider any document that is "integral to and explicitly relied on in the complaint." *Phillips v. LCI International, Inc.,* 190 F.3d 609, 618 (4th Cir. 1999). As such, LMC permissibly attaches the Policies and Procedures Acknowledgement Form and the EEO policy discussed in Plaintiff's Complaint. (Compl., ¶¶ 33-36). Plaintiff's reference to these documents in her Complaint allows LMC to submit them for the Court's consideration without converting this Motion in into a motion for summary judgment. *See Boozer v. MCAS Beaufort*, No. 2:14-cv-3312-DCN-JDA, 2015 WL 1640473, at *3 (D.S.C. Apr. 9, 2015) ("[F]or purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference."); *see also Deas v. Prudential Ins. of Am.*, No. 2:17-cv-03016-DCN, 2018 WL 1993869, at *2, n. 2 (D.S.C. Apr. 26, 2018). Here, even if the Court was unable to consider the EEO policy, dismissal of Plaintiff's claim would still be warranted because Plaintiff has failed to allege how any particular policy or procedure has overcome the presumption of at-will employment or restricted LMC's ability to terminate Plaintiff at any time for any reason. *See Brailsford v. Fresenius Med. Ctr. CNA Kidney Centers LLC*, No. 2:15-cv-00239-DCN, 2015 WL 4459032, at *4 (D.S.C. July 21, 2015) (finding that despite the fact that plaintiff did not attach the handbook nor was it part of the record, "none of the provisions that [plaintiff] cites—including those related to sick leave policy and voluntary resignation—impose a limitation on the [employer's]right to terminate an employee at any time, for any reason.") (internal quotations omitted).

disclaimer automatically bars any claim by Plaintiff that LMC's policies created an enforceable contract.

The inclusion of these disclaimers also rebuts any contention that Plaintiff can establish the basic elements attendant to contract formation or that the Company's Policies and Procedures, including the EEO policy, were ever intended to act as binding legal documents containing promises to Plaintiff in furtherance of her employment. *Roberts v. Gaskins*, 327 S.C. 478, 486 S.E.2d 771, 773 (1997) ("The elements required to establish a contract are an offer, acceptance, and valuable consideration."); *Lawrence v. Westinghouse Savannah River Co., Inc.*, No. 1:03-cv-484-27, 2005 WL 3968031, at *14 (D.S.C. Mar. 31, 2005) ("In the employment context, "[f]or a contract to be created, the employee must be aware of promises . . . must have relied on (and continued work in reliance on) those promises, and the promises must restrict the right to discharge."). For these reasons, Plaintiff's breach of contract claim is subject to dismissal based on LMC's conspicuous disclaimers, standing alone.

### 2.    <u>The EEO Policy lacks mandatory language altering at-will status.</u>

The EEO policy also fails to meet the legal standard necessary to establish contract status because it does not "promis[e] specific treatment in specific situations," *Hessenthaler*, 616 S.E.2d 698, nor does it "impose a limitation on [LMC's] right to terminate an employee at any time, for any reason." *Grant v. Mount Vernon Mills, Inc.*, 634 S.E.2d 15, 20 (S.C. Ct. App. 2006). Rather, the policy denotes the employee or the Company may exercise "the option of terminating employment at any time with or without cause." (Ex. 3, p. 1, ¶ I. A.)

Notably, Plaintiff's pleading fails to plausibly allege any specific policy language that contains promises or mandatory terms to overcome the presumption that she was employed by LMC at-will. Rather, Plaintiff alleges a breach of **<u>protection</u>** and not a breach of **<u>employment</u>**

13

**status**. All of her allegations regarding LMC's purported breach relate to "the promise of being *protected* from unlawful discrimination," and LMC's alleged "fail[ure] to adhere to its promises of *protection*." (Compl., ¶¶ 34, 35] (emphasis added). However, LMC is statutorily required to be nondiscriminatory and the absence of any limiting language on LMC's ability to terminate is directly borne out by the general statements encompassed in the Company's policy, which does not guarantee Plaintiff specific treatment in specific situations. *Brailsford,* 2015 WL 4459032, at *4–5 (dismissing breach of contract claim pursuant to Rule 12(b)(6) and observing that plaintiff had failed to allege he entered into a contract which "impose[d] a limitation on [the employer's] right to terminate [his employment] at any time, for any reason").

### i. The EEO policy is only an aspirational statement that does not create a contract.

LMC's EEO policy is not a mandatory, binding contract because by its very terms it is only a general policy statement of LMC's statutory obligations to be nondiscriminatory, which does not give rise to a breach of contract claim under South Carolina jurisprudence. "The South Carolina Supreme Court has explicitly held that such general EEO statements do not alter the at-will relationship or give rise to a breach of contract claim." *Pauling v. Greenville Transit Auth.*, No. 6:05-1372-HMH-BHH, 2006 WL 3354512, at *12 (D.S.C. Nov. 16, 2006). LMC's EEO policy states the following with respect to its equal employment efforts:

> It is the policy of LMC to provide equal opportunity employment for all individuals and to remain compliant with applicable state and federal laws and regulations. LMC strives to provide a discrimination-free environment, and to recruit, select, on-board, and employ all employees without regard to race, color, religion, sex, age, disability, national origin, veteran status, or pregnancy, childbirth or related medical conditions, including, but not limited to, lactation. LMC endeavors to upgrade and promote employees from within the organization where possible and consistent with the employee's desires and abilities and the organization's needs.

(Ex. 3, ¶ III. A.).[5]

      The South Carolina Supreme Court has previously held that a nondiscrimination provision, like the one contained in LMC's EEO policy, does not constitute an enforceable promise altering the at-will nature of an employment relationship. *Hessenthaler* 365 S.C. at 109–110, 616 S.E.2d at 698.[6] The court contrasted mandatory, progressive discipline procedures from the provision at issue, and explained that "a general policy statement of nondiscrimination does not create an expectation that employment is guaranteed for any specific duration or that a particular process must be followed before an employee may be fired." *Id*. In other words, a general policy, does not alter an employer's ability to terminate at-will.

      Just like *Hessenthaler*, LMC's EEO policy is a general policy statement, informing its employees of the Company's compliance with federal and state laws related to equal employment opportunities and its intention to "strive" to create a discrimination-free workplace. If nothing else, this language is aspirational—not a guarantee or promise of any kind. *See Pauling*, No. 6:05-1372-HMH-BHH, 2006 WL 3354512, at *12 ("Instead of being mandatory, the [EEO] language recited by the plaintiff in this case is aspirational in nature—what the defendant would *strive to provide*, generally. In fact, the statement indicates that the defendant will 'promote' an atmosphere free of discrimination; it does not guarantee such an atmosphere.") (emphasis added); *see also Ford v. Musashi SC, Inc*., No. 4:07-3734-TLW, TER, 2008 WL 4414385, at *2 (D.S.C. Sept. 23, 2008) (granting dismissal of breach of contract claim when the plaintiff failed to allege enforceable

---

[5] The policy also notes LMC is "commit[ted] to providing a work environment that fosters teamwork respect, equal opportunity, and open communication." *Id*., ¶ I. A.

[6] In *Hessenthaler* the policy stated, "[the Shelter] is an equal opportunity employer. All decisions, including hiring, training, and promotion, are made without regard to race, color, religion, national origin, sex, age, handicap, sexual preference, or any other protected status." *Hessenthaler*, 365 S.C. at 110, 616 S.E.2d at 698.

handbook promises apart from the defendant's promise to be fair and nondiscriminatory, which is statutorily required.).

In *Nelson v. Medical University Hospital Authority*, the Fourth Circuit Court of Appeals affirmed this District Court's dismissal of plaintiff's breach of contract and breach of contract accompanied by a fraudulent act claims, specifically finding that typical anti-discrimination and anti-retaliation policies, like those set forth by LMC here, are not adequate to form a binding contract of employment between parties. No. 2:17-cv-0187, 2018 WL 4204243, at *1 (D.S.C. Aug. 7, 2018), *aff'd*, 764 F. App'x 383 (4th Cir. 2019); *see also, Oroujian v. Delfin Grp. USA LLC*, 57 F. Supp. 3d 544, 558 (D.S.C. 2014) (dismissing a breach of contract claim based on, among other findings, that "the language cited by the Plaintiff in his Amended Complaint is typical of antidiscrimination language found in most employee handbooks, and has routinely been held by courts not to, by itself, constitute a contract.").

### ii. The EEO policy does not guarantee specific treatment in specific situations.

Plaintiff also cannot prove contract formation because the generalized company goals embodied in the EEO policy fail to promise specific treatment in specific situations. *Conner v. Nucor Corp.*, No. 2:14-CV-4145, 2015 WL 5785510, at *9 (D.S.C. Sept. 30, 2015) ("For a general policy statement to be enforceable as a contract, the statement must be definitive in nature, promising specific treatment in specific situations."). Instead, the overall tone and tenor of the EEO policy manifests a singular intent—to outline the Company's equal employment goals. The policy's language in no way hinders LMC's ability to terminate employment at any time for any reason, contravening any assertion that these general policy statements are a valid employment contract.

In fact, South Carolina courts have consistently held an employer policy is not an enforceable contract unless the employer "phrase[s] the document's language in mandatory terms giving rise to a promise, an expectation and a benefit to an employee." *Nelson v. Charleston Cnty. Parks & Recreation Comm'n*, 362 S.C. 1, 605 S.E.2d 744, 747 (S.C. Ct. App. 2004). Here, the only purported "promise" or "expectation" noted in the EEO policy with respect to employment is LMC's reiteration of the at-will nature of the relationship, placing no limit on the Company's power to end employment at any time. *See* Ex. 3, ¶ I. A. ("All employees who are not under a contract . . . are 'at-will' granting the employee or company the option of terminating employment at any time with or without cause."); *Wadford v. Hartford Fire Ins. Co.,* No. 87–2872, 1988 WL 492127 at *5 (D.S.C.1988) ("A review of the relevant authorities . . . reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status."); *Storms v. Goodyear Tire & Rubber Co.*, 775 F. Supp. 862, 867 (D.S.C. 1991) (finding language in the agreement insufficient to form a contract when it is "not couched in mandatory terms and does not contain language that specifically limits the employer's right to demote or terminate [plaintiff] without cause").

Because the EEO policy lacks the essential language required to create a binding contract under South Carolina law, Plaintiff's breach of contract claim should be dismissed with prejudice.

## C.    **Plaintiff's Breach of Contract Accompanied by a Fraudulent Act Cause of Action Should Likewise Be Dismissed.**

In her third cause of action, Plaintiff contends LMC acted in "bad faith" in conjunction with its alleged breach of the EEO policy via an "intentional design" to "defraud Plaintiff." (Compl., ¶¶ 47, 48). However, the same fundamental flaw that preludes Plaintiff's breach of contract claim also justifies dismissal of this cause of action: the EEO policy is not a valid,

enforceable contract. As such, there was no breach, and even if there had been, Plaintiff has neglected to sufficiently plead any fraudulent act in furtherance of the alleged breach.

To state a viable claim for breach of contract accompanied by a fraudulent act, Plaintiff must plead facts establishing the following elements: (1) a breach of contract, (2) fraudulent intent relating to the breaching of the contract, not merely to its making, and (3) a fraudulent act accompanying the breach. *Hotel & Motel Holdings, LLC v. BJC Enterprises, LLC*, 414 S.C. 635, 654, 780 S.E.2d 263, 274 (S.C. Ct. App. 2015) (citing to *Floyd v. Country Squire Mobile Homes, Inc.*, 287 S.C. 51, 53–54, 336 S.E.2d 502, 503–04 (S.C. Ct. App. 1985)). Further, Rule 9(b) of the Federal Rules of Civil Procedure requires a heightened standard when pleading fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See Advanced Pain Therapies, LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 3:14-cv-00050-MGL, 2014 WL 4402800, at *3 (D.S.C. Sept. 3, 2014) ("Because Plaintiff alleges breach of contract accompanied by a fraudulent act, Plaintiff must plead the allegations of fraud with particularity as required by the heightened pleading standard[.]"). However, Plaintiff's claim fails on all essential prongs, and this cause of action should be dismissed with prejudice.

### 1.      <u>Plaintiff has not established a contract or its breach</u>.

Most detrimental to Plaintiff's claim is her complete and utter inability to prove the existence of a binding contract. As set out more fully, *supra*, LMC's EEO policy is not an employment contract, making Plaintiff's breach of contract accompanied by a fraudulent act cause of action based on this same "contract" untenable as a matter of law. *Amason v. PK Mgmt., LLC*, 2011 WL 1100169, at *6 (D.S.C. Mar. 23, 2011) (granting defendant's motion to dismiss breach of contract accompanied by a fraudulent act claim because plaintiff did not plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship, causing the entire claim to fail at the outset); *Brailsford*, 2015 WL 4459032, at *5 ("Since

Brailsford has failed to plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship, her claim for breach of contract accompanied by a fraudulent act also fails."); *Frasier*, 2008 WL 724037, at *2 (granting motion to dismiss where employer's policy did not alter at-will employment relationship and holding that because the policy provisions "are legally insufficient to create a contract, [] Plaintiff's claims for breach of contract and breach of contract accompanied by a fraudulent act must fail"); *Todd v. S. State Bank*, No. 2: 15-CV-0708-RMG, 2015 WL 6408121, at *4 (D.S.C. Oct. 22, 2015) (adopting Report and Recommendation granting motion to dismiss claims of breach of contract and breach of contract accompanied by a fraudulent act because employer handbook did not create a contract, finding the Magistrate Judge "applied sound law and reasoning in concluding that a claim involving breach of contract accompanied by fraudulent act should be dismissed in the absence of a contract"); s*ee also, Smith v. Palmetto Denture Care, P.A*., No. 7:17-cv-1043-AMQ-KFM, 2018 WL 3611368, at *5 (D.S.C. July 27, 2018) ("The Court has already addressed Plaintiff's arguments regarding the existence of a contract and found that Plaintiff has failed to state a claim. Therefore, this defect necessarily is fatal to Plaintiff's breach of contract with fraudulent intent claim.").

The law remains clear, because Plaintiff has not established the existence of a valid contract to plausibly state a breach contract claim, she also failed to properly alleged breach of that same contract accompanied by a fraudulent act, and, thus, the third cause of action should be dismissed with prejudice.

      2.    **Plaintiff neglected to plead facts sufficient to allege LMC's fraudulent intent and a fraudulent act separate and independent from its alleged breach of contract.**

Even if Plaintiff could prove that an employment contract existed and was breached— which she cannot—this claim would still fail as a matter of law because the Complaint is devoid

of any particular facts demonstrating fraud. A claim for breach of contract accompanied by fraudulent act "requires proof of fraudulent intent relating to the breaching of the contract, not merely to its making." *Ball v. Canadian American Exp. Co., Inc*., 314 S.C. 272, 276, 442 S.E.2d 620, 623 (S.C. Ct. App. 1994). "Fraudulent intent is normally proved by circumstances surrounding the breach." *Land v. Wal-Mart Stores E., L.P*., No. 4:07-cv-00369-RBH, 2008 WL 1766723, at *8 (D.S.C. Apr. 15, 2008).

Here, Plaintiff's pleading broadly speculates, rather than specifies, the alleged fraudulent intent, with respect to the making of the "contract" and the purported "breach" of the "contract." Other than asserting conclusory legal statements that LMC engaged in an alleged "intentional design on its part to defraud Plaintiff" and its "false reassurances were fraudulent," Plaintiff has not advanced any general factual allegations, much less particular allegations as required by law, to support her bald conclusions. (Compl., ¶¶ 48, 49)

Further, Plaintiff's pleading lacks proof of an independent fraudulent act by LMC, which is required to adequately state a claim for relief. A "fraudulent act is any act characterized by dishonesty in fact or unfair dealing." *Conner v. City of Forest Acres*, 348 S.C. 454, 466, 560 S.E.2d 606, 612 (2002). "The fraudulent act may be prior to, contemporaneous with, or subsequent to the breach of contract, but it must be connected with the breach itself and cannot be too remote in either time or character." *Zinn v. CFI Sales & Mktg., Ltd*, 415 S.C. 93, 111, 780 S.E.2d 611, 621 (S.C. Ct. App. 2015) (internal citation and quotation marks omitted). In her Complaint, Plaintiff appears to assert the violations of LMC's policies and procedures constituted fraud, yet she has not provided any facts to support a fraudulent *act*—only alleged fraudulent *intent*. Absent sufficient allegations plausibly alleging an independent fraudulent act by LMC, Plaintiff cannot sustain her claim and dismissal with prejudice is warranted. *See Minter v. GOCT, Inc*., 322 S.C.

525, 530, 473 S.E.2d 67, 70–71 (S.C. Ct. App. 1996) (affirming dismissal when plaintiff merely alleged facts supporting fraudulent intent underlying the alleged breach without identifying an independent fraudulent act.).

## V.    CONCLUSION

For the foregoing reasons, LMC respectfully requests this Court enter an Order dismissing, with prejudice, Plaintiff's § 1981 claim premised on alleged termination via acceleration of her voluntary resignation, breach of contract, and breach of contract accompanied by a fraudulent act causes of action, and order any further relief the Court deems just and proper.

Respectfully submitted,

*s/ Nikole Setzler Mergo*
Nikole S. Mergo (Federal ID No. #7410)
Christina L. Rogers  (Federal ID No. 11994)
**MAYNARD NEXSEN PC**
1230 Main Street, Suite 700
Columbia, SC 29201
Phone:  803.771.8900
Facsimile:  803.253.8277
Email: nmergo@maynardnexsen.com
Email: crogers@maynardnexsen.com

*ATTORNEYS FOR DEFENDANT*
*LEXINGTON MEDICAL CENTER*

October 15, 2024
Columbia, South Carolina